323-0222 Climate Pros, LLC Plaintiff Appellant by Eric Rumbaugh v. James Fordyce, FLE by Timothy Fordyce Mr. Rumbaugh, you may proceed. Thank you. It is the court. My name is Eric Rumbaugh. I am counsel for Appellant Plaintiff Climate Pros. I always say I'll be brief, but this time I promise I will be brief. I try not to rip the arguments that are brief, but I'll stick to the things that seem to be the easiest and lowest hanging fruit. A little bit of background. Our client is Climate Pros. They're a contractor that does work, in this case, for big retail stores. They do contracting for refrigeration services, sometimes with another contractor, sometimes on their own. They have a competitor named Lombardi. Mr. Fordyce's boss, Mr. Christerson, took a bunch of documents and actually started doing work for Lombardi with a Lombardi email account while he still worked for us. We sued him. En passant, in the course of investigating that, we found out that right before Mr. Fordyce shortly left with Mr. Christerson to join Lombardi, right before Mr. Fordyce left, and these two cases were consolidated. The case against Christerson continues in DeBege County. Right before we, again, in the course of investigating that, we found out that Mr. Christerson, right before he announced his resignation, emailed a bunch of documents to a personal email account with no business reason to do it. Then right after he announced his resignation to go to work at Lombardi, he emailed himself a second tranche of documents. We allege that that was both a trade secret misappropriation and a breach of duty of loyalty. The trial court dismissed. The three issues before us are, one, along with their motion dismissed, which is a combined 615-619 motion, the plaintiff submitted, or the defendant submitted multiple affidavits. The court shouldn't have considered those under 615 or 619. In both cases, because the well-pleaded allegations of the complaint have to be considered true for purposes of motion dismissed, and the 619 case because they, actually in both cases, they contradict well-pleaded facts of the complaint, and second, as to 619, because as the Illinois Supreme Court interpreted affirmative matters, the matters that are alleged in the affidavits weren't affirmative matters as reckoned by the Illinois Supreme Court in Smith v. Lockheed in Park District and its progeny as we cite in our brief. Also, counsel, it's not clearly delineated between the 615 and the 619 allegations. That is exactly correct, and that's my first argument, Your Honor. Under Illinois law, and I'm going to be very brief on this, 619.1 requires that in a motion, if it's a combined 615 and 619 motion, the motion shall be in parts, each part shall be limited to and shall specify that it was made under one of sections 2-615, 2-619, or 2-1005. Each part shall clearly show the points or grounds relied upon the section upon which it is based. That didn't happen here. We objected at the trial court. The trial court never addressed which sections of the brief were filed under 615 or under 619. That's fatal in the cases that we've cited in our brief. What the trial court should have done, and what this court should do, is sua sponte, dismiss the motion. That's easy. As you note, Justice Albrecht, that's the easiest, lowest hanging fruit reason for the court to overturn the dismissal in this case. Second, under, and we briefed this, I'll be brief, under as the Illinois Supreme Court in Smith v. Waukegan Park District in multiple cases following have held a 619 motion cannot attack the complaint's allegations. In this case, the complaint does. I can walk through paragraph by paragraph if the justices want me to. I don't want to eat up my time. It would be time consuming, but I will. The complaint attacks our allegations in the complaint. Excuse me, the defense motion attacks our allegations in the complaint. Did we take reasonable steps to maintain secrecy? Are the things that Mr. Fordyce misappropriated secret? Are they useful? The Smetana declaration is problematic for two reasons. One, it attacks the complaint, and two, it's a giant red herring. I don't know if the justices have had a chance yet to look at the documents that Mr. Fordyce actually emailed to himself and the Smetana declaration. The Smetana declaration attaches a one page spreadsheet showing the bids of four bidders on a job for Julasco. It has the final bids. Counsel, we could not find the actual spreadsheet that Mr. Fordyce emailed to himself. Were we just overlooking that in the record, or is it not in the record? There was kind of a hullabaloo about this. So opposing counsel asked for leave to file it with this court, and we believe they did. So it's here. I have a hard copy of it. It's this thick document that has the first two-thirds of it. It's in the record. You should have it. The first two-thirds of it are unit labor costs for hundreds of employees. So it's names of employees, their hourly rate, and their labor costs. Then the next section is a spreadsheet listing cost elements that go into a bid. In this case, there was a couple of coolers, so most of the rows aren't populated, because we weren't doing that work. But for the rows that are populated, it lists our internal cost overhead element for the elements that went into the ultimate bid, and then it lists some other items. And my next question, is that document sealed in the record? The document's sealed in the record, and that's why there was such an issue around, as the court knows, under the Illinois 1 of 49 states that have got the Uniform Trade Secret Act, the Uniform Trade Secret Act requires that courts take reasonable steps to protect the secrecy of alleged trade secrets. There's always a protective order in a trade secret case. So that's why these things are filed under seal. I don't know why your honors don't have it. We may have it, we just may not have found it in the record. We're fine with the justices looking at it, because it is not the Smitana document. The Smitana document is the end number. The documents that Mr. Fordyce misappropriated are the elements that went into the final bid. Now he alleges they're useless, they're not confidential. We say, yes they are, and that's a jury issue. If he can prove, he says the competitors each got to see each other's final bid at the end. Even if that's true, they didn't get to see each other's elements that went into their final bid, and how they calculated. That's what the spreadsheets he took show. The Smitana document is a complete red herring, it's not the document he took, and I would say, could the trial court say, as a matter of law, that when I explain what a trade secret is to my team or to a client, I'll say is this, and a document by the way isn't a trade secret, it contains trade secrets, is the information in this document, is this something the competitor could lawfully get through reasonable means? If the answer is no, could they make actual business use of it? The answer in this case is obviously yes, nobody in our industry gets to see each other's, how they calculate a bid, maybe in some cases they get to see the actual end of each other's bid, but how they calculate, they don't. So Council, for example, I'm looking at a document here, it's not marked, it just says, value overhead expense by state table, and the thing, the reason you might recognize it is it has the abbreviation for the states on the side. This is a trade secret in your opinion? That's not the, I don't know, I'm not saying that that particular page I can't see is, I will say that the June document, the clearest example of trade secrets in what Mr. Fordyce emailed to himself is the June document that has the cost elements that went into a particular Julosco bid, and to which Mr. Fordyce's answer is, well, we had a guy at Julosco submit an affidavit saying well, I told everybody what each other's end bids were, if that happened in that one case, great, if it happened in every case, great, I don't care. It's our position that competitors don't get to see how the sausage is made, don't get to see each other's bid elements. So, we would submit that that's a jury question, whether that's a trade secret, I don't want to spend time on unreasonable efforts to maintain secrecy, as we've pled basically every case that's looked at and said that's a jury question, even if we're at summary judgment, that's a jury question. We've pled, I think it's paragraphs 15 through 29, different efforts that we've taken to maintain secrecy. Whatever you do, there will always be additional things you could have done. Mr. Fordyce argues that absent a non-disclosure agreement, there can't be a trade secret. That's not the law here or anywhere. I want to, well, I'll stick to this and I'll come back to my main point. The trial court said, the trial court gestalted, never explained what it was looking at. I've looked at this and I don't see anything that could be reverse engineered, therefore it's not a trade secret. The plaintiff, the defendant's argument was cost margin pricing data, formulas for pricing can never be a trade secret, and they cite some cases saying that in those cases, cost margin pricing data, pricing formulas can't be, aren't a trade secret. Every one of those, and we cite this in our brief, was after a bench trial or an evidentiary hearing or a summary judgment. There's not one case that we've seen, and I've been litigating these cases for 34 years, I've never seen one case ever where court's been able to gestalt a document and say like Carnac, I can tell that this isn't a trade secret by looking at it. But counsel, if the 619, excusing the fact that the 619-01 wasn't maybe done the right way, a 619 would be an appropriate way to attack your allegation that this is a trade secret by responding that it's not a trade secret. Here you go, here's our affidavit, here are the documents showing us that. Okay, two points. One, if Smitana attached the document that Fordyce took, maybe, but still no, because Smitana says we disclosed ultimate bids. Smitana doesn't say we disclosed the costs that went into each of the bidder's bids. Even if he did say that, the fact that he said it wouldn't mean that we couldn't refute that at trial. The way trade secret cases show up is you take discovery and you find out, alright, you're saying this isn't a public domain, it's reasonably ascertainable by competitors, let's go to those competitors. Show me how many times Lombardi got a competitor's component price elements. Maybe they got their ultimate bid, how many times did you see the elements that went into them formulating a bid? And my guess is never or virtually never. So it is practically secret in this industry, we allege, that's disputed. If they can prove that it's publicly available, great, they're not going to be able to as to the documents that Mr. Fordyce took, but as to Smitana, it's a straw man. That's not the document he took. We do not allege, we say over and over again in our brief and our reply brief, that the ultimate bid amounts themselves naked or trade secret. But, in this industry we allege over and over, competitors don't get to see how the sausage is made for each other, they don't get to see their cost elements, and how they lump them together to come up with a final bottom right number, which the ultimate bid price, which is a document again that the justices have, I hope, somewhere. So, back to 619, it's very clear under Smith v. Waukegan Park District and its progeny. What are those elements, we're talking about the cost, etc., I'm a simple person, what are those cost elements that you think are trade secrets? We put together how much we thought it would cost for particular pieces of work, prices, costs, taxes, labor, to come to a total price, I want to say like $64,900, that's the end number. How would you add to get to that? That's what I'm asking, so all the components to get to that end number are potentially trade secrets, correct? So, a couple things. One, even publicly available information can be trade secret if it would be difficult to aggregate. Second, our cost... That would be difficult to aggregate. It would take lots of time, how long would it take for you to aggregate this? That would make it a trade secret. In this case, though, our internal assessment of how much we think, if there's 30 cost items, I forget how many there are, but for discussion purposes, if there's 30 cost items here, we say $3,211 for that, $1,406 for that, $98 for that, we have those numbers in the spreadsheet and it adds up to the $64,900 or whatever it is end number at the end. We are bidding against someone to try and come in under them. If we knew what their costs are for each of their elements, we could figure out what we need to bid. You don't want to bid... If they're going to bid $65,000, we don't want to bid $55,000 because now we don't have any cost, any margin. We want to bid $64,000 just under them so we win the bid but make the most money that we can. That's how a competitor will make practical use of a competitor's cost margin pricing data. If you know what the other side's... It would be like the Bears finding the Packers playbook before the game. It's basically playing cards on the other hand. That's exactly correct but the trial court was wrong, just dead reversible wrong to say there's a per se rule that this type of information can't be a trade secret. We don't know what the trial court's reasoning was. She just said well I've looked at this I don't think it'd be reverse engineered. Well she's looked at this McDonough document, maybe I'd agree with her but that's not what we're alleging as a trade secret. We don't know what the trial court was looking at. If you look at the documents that Fordyce actually emailed to himself those are trade secrets. The easier way for the court to for this court to reverse is very clearly under Smith v. Waukegan Park District the factual matters averred by Fordyce and Smitana contradict us. They're not proper under 619. I would say if you can submit counter affidavits in support of a motion to dismiss I'm doing it every time. And everyone in the state's going to do it every time. You get two summary judgment hearings. And lastly as to the breach of duty of loyalty claim he clearly breached his duty of loyalty. He did things for the benefit of a competitor while he worked for us. But if the court says there's no trade secrets, there can't be trade secret preemption of a breach of duty of loyalty claim. Once the court said I don't find any trade secrets here, breach of duty of loyalty claim, the only basis for dismissing the breach of duty of loyalty claim was it's preempted by the Trade Secret Act. That's not true because commingled trade secret and non-trade secret information doesn't create preemption. But moreover, once the trial court said there's preemption well then the breach of duty of loyalty claim had to go forward. I apologize, I'm over. If any of the justices have questions I'll take them. Thank you, Your Honor. Thank you. You have time to reply, Counsel. Counsel Fordyce, you may respond. Thank you, Your Honors. I'm pleased to support. My name is Tiffany Fordyce and I'm pleased to be here representing the defendant appellee, James Fordyce. Your Honor, Mr. Fordyce maintains that none of the elements were met with respect to misappropriation of trade secrets or breach of fiduciary duty. I'm going to give you an overview of what I think are the three most important and then I would like to respond to some of the points that Mr. Ronbaugh raised. First of all, as a matter of law, Judge Wheaton was able to determine that these documents were not trade secrets. There were three spreadsheets. Justice Heddell does have one of them. I can tell by how he described it. We can't get close enough if we could in a trial court to exchange these, but I have three documents. One is a one-page document. You can see this one. I assume that this looks familiar in my right hand, right? I'm familiar with all three, but yes. So that would be the dual document, Your Honor. And Counsel's holding up two copies of those, but I don't want to overstep. These are much bigger. These aren't the documents you have. Okay. Well, I'll let you go forward then and we'll try to figure that out with maybe an agreed-upon motion between the parties after our arguments are done so we know exactly... We'll double-check to make sure that we don't... So, Your Honors, we did have to... So the situation... Well, first of all, let me correct one misstatement from the record. These documents were never filed under seal. What happened was initially, with regard to the temporary restraining order motion that Climate Post brought, we submitted those documents for in-camera inspection via email. That's why they weren't in the record when the record came up. So we filed a motion to supplement the record, and we thought it was important for Your Honor to see it in native so that you could see, with respect to this dual document in particular, that all three, there are no formulas in these documents, Your Honor. As is set forth in Mr. Cordes' declaration, but you don't need the declaration. So let's trace this back. You filed a motion to file, supplement the records, correct? Yes, Your Honor. And you filed it with, obviously, the court and opposing council. Yes, Your Honor. It was granted. Was it unopposed? I don't recall if it was unopposed. A lot of the motions, pre-trial motions, were opposed. But it was granted ultimately. I'm talking about our court. Yeah, we had a lot of motion practice. We can only deal with what allegedly is here. Here, right. And there's an unusual amount of, I would say, motion practice in regards... But be that as it may, the motion was granted, and I understand it's in the record as Supplemental Exhibit 1. And it's a thumb drive, and it's a native file, so you can see everything. Okay. You think that's here in our court? Your Honor, I... So if it is not filed under seal, then the court will... Justice, should we suspend the time now that we're trying to throw out these procedural aspects here, and maybe have our clerk tell us... Well, I don't think it's necessary. No? Okay. Yep. It's an oral argument. Okay. Okay. So it is in the record. And I'm only addressing this because I want the record to be complete and clear. Subsequently, in relation to a subsequent fee motion, after the motion to dismiss was granted, we did refile these documents in hard copy form because we just thought it would be easier. At that point, the motion to dismiss had been granted. The court had determined it wasn't a trade secret, not filed under seal, and Climate Pro's never objected. So that is in the record just subsequent to when this portion came up, if that makes sense. Okay. All right. So with respect to the 269, let me take a step back. We acknowledge that Judge Wheaton did not clarify whether or not she was granting the motion to dismiss pursuant to 2615 or 2619, but we do maintain that dismissal was proper in any event. So there were three documents. The court had the opportunity to review them. When you see them in native, you'll see that there are no formulas. These were figures that were inputted into one piece of a multi-page document with a lot of different components to it, and that was the piece that, you know, allegedly Mr. Fordyce had inputted in with respect to just the electrical component of one job. This did not constitute a trade secret because as Stenstrom has made clear, here in Illinois, when we're talking about construction bids, construction bids are a per se rule. The court never said it. Mr. Fordyce never argued it, that never under any circumstances can pricing information be trade secrets. But on this record, in this case, under Stenstrom, Mead, Alpha School Bus versus Wagner, we literally have a string site of a page of cases that talk about desired profit margins. Bids, markups, are not trade secrets, and that's what we have here. So under 2615, and of course, because these documents were referenced in the complaint, Northwestern Illinois Area Agency on Aging versus Boston makes clear that they were incorporated into the complaint, and so it was absolutely proper for the circuit court to review those records. Now let's talk about 2619. We did submit an affidavit by Mr. Fordyce as well as Scott Smetana, and never, Your Honors, have we tried to assert or the final bid tabulations that for seven years, Mr. Smetana had been disclosing to anyone who bids on any projects. So at the end of the day, ClimatePro's competitors on this project got the final bid tabulations. But let's keep in mind what's in the complaint. The complaint does not only talk about constituent elements. It talks about information about proposed bids. It talks generally about pricing, and it defines trade secrets as applicable bid proposals and proposals for ClimatePro's customer store in Plainfield, Illinois. So based on the plain language of the complaint and what was alleged, they did not parse out whether or not constituent elements of bids, which Stenstrom clearly says are not trade secrets or trade secrets versus the final bids themselves. They said all pricing information are trade secrets. And the point is, Your Honors, that if Mr. Smetana is disclosing this information freely to ClimatePro's competitors for nearly a decade with their knowledge, it couldn't possibly constitute a trade secret. Now, if ClimatePro's themselves can't determine based on their own allegations in their complaint what's a trade secret or not. Is it the final bid tabulation? Is it the constituent elements? Is it one piece of the constituent elements? Or is it the entire spreadsheet? Right? There was only the electrical component that's listed under miscellaneous contractor that's at issue here. How is Mr. Forde supposed to understand that? If they don't know what's their own trade secret, how are their own employees supposed to know? That was the import of the declarations. Moreover, Your Honors, we disagree that the declarations contradicted well-pled facts. Very much so, this complaint pled the elements of trade secret misappropriation in a very conclusory fashion. It said things like, we take reasonable measures to protect our trade secrets. It relied really on two things here, Your Honors. An employee handbook that was not attached to the complaint, but some portions of a reference, and the fact that the system is password protected. Counsel, that gets into my concern with regards to the form of the motion, which is 2619.1 motion. The issue is that the complaint is defective because it doesn't contain enough facts, is a 2615. That would allow the plaintiff to re-plead if the court allowed it. 2619 are affirmative matters outside of the complaint. And 2619 is not an opportunity to attack the allegations made in the complaint because all well-pled facts are deemed true. The fact that there is no differentiation in the motion between what is a 2615 and what is a 2619 makes it very and the fact that the trial judge made no differentiation makes it very, very difficult for us to properly go through the record and analyze the decision and ascertain whether the decision was appropriate. So I understand your concerns, Your Honor, but I think the reality is it was clear from the briefing in response to the motion to dismiss that Climate Pros absolutely understood the difference to the extent we were attacking the pleadings and arguing that the actual documents, the three spreadsheets, Excel files that issue were not trade secrets. That was a 615 motion. And to the extent we were relying on the affidavits, that was a 619 motion. And as I'm going to mispronounce this, but it's in the brief Creonet versus McKnight held, as long as there's no prejudice to the party, it's okay for an appellate court or even a trial court to consider a combined 2615-2619 motion. And in fact, Climate Pros didn't even argue in their brief that they were prejudiced by this lack of distinction. I'm sorry to interrupt. Please. I just want to make sure you didn't misspeak. The 2615 motion you talked about or just alluded to, facts. The 2615 was based on the allegations and the complaint and then by extension, because of the Northwestern case, allowing us to actually put the three Excel files that issue, they were incorporated as part of the complaint. So that was the 2615 motion. So the 2615, you're saying this is what, this is the life behind the allegations, these three documents, and they're not trade secrets. That is the cause of action. As well as the allegations themselves. But yes. That seems more like a 619 motion when you agree. No, Your Honor. I'm talking about the allegations and the complaint. I know. But you're also saying that it wasn't a trade secret in that and thus didn't state the cause of action, 615. Well, Your Honor, I would disagree because of the fact that they incorporated and relied on the actual trade secrets at issue in the complaint that pursuant to Northwestern Illinois Area Agency versus FOSTA that doesn't convert it to a 619. It incorporates the three trade secrets at issue into the complaint and makes them part of the complaint. And so that portion is the 615 portion. I follow your argument. I just want to make sure that I am hearing it the right way. So you're saying, here's a picture of these allegations, Judge. These are the, they're not trade secrets. So they don't state a cause of action. Yes. That's basically what you're saying. Yes, Your Honor. Okay. And that's the Northwestern case and I'll find it. Yes, Your Honor. Now the 619 affidavit did not refute well-plated facts. For example, the facts in the complaint says that we took adequate measures to protect our trade secrets, they say in a bit of a conclusionary fashion, and then they go on to rely on a handbook and the fact that the system was password protected. Respectfully, Your Honors, that's not enough. We didn't submit affidavits to say we disagree about the handbook. We didn't address the handbook. That would have been disputing a fact that's in the complaint. What we said is, let me introduce additional affirmative matter, not pled. For example, Mr. Fordyce is in a party to a non-compete. That's a basic premise of establishing a trade secret. Interestingly enough, climate pros, neither climate pros nor Mr. Fordyce, has cited to a single case where they upheld a misappropriation of trade secret claim absent a non-disclosure agreement. That includes the cases cited by climate pros that did have some language in there indicating that it's not a sine qua non, or it's not a prerequisite. Maybe not, Your Honors, and I'm only talking about this case, but I will tell you that the two cases that climate pros cited, both of those cases, the plaintiff had the defendant sign a non-disclosure agreement. They have this broad statement in there about the fact that non-disclosure agreements aren't required, and that was a critical fact, Your Honor, that did not refute any well-pled allegation. Also, obviously, it introduced this issue of Mr. Smitana and the sharing of the pricing information, and one of the reasons, Your Honors, that I think this was significant is that when we were arguing the TRO, climate pros counsel himself said, and this is on page C997 in the record, and I quote, however, if there have been cases in the past where Juul has shared bidder data, bidder data, if, in fact, Juul shared everybody's bid with everybody in this case, then there would be an argument, but that hasn't been alleged. Your Honors, that is as close to an admission than we're ever going to get, that the sharing of bidder data and that constituent element's pricing information destroys the trade secret status, and that's exactly what happened here, and that's why that was relevant, and it did not refute a Juul-led fact. It introduced new affirmative matter. That was not addressed in the complaint. I know I'm almost out of time, and so I want to at least address the breach of fiduciary duty claim. Here, there's clear preemption, because if you look at the allegations in the complaint, the breach of fiduciary duty claim is premised wholly on the misappropriation of trade secrets. ISTA was amended to add Section 8, and that specifically dealt with the issue that absent a contract, which we've already established that we don't have here, absent a contract, if your breach of fiduciary duty claim is premised on the same thing that supports the misappropriation claim, that's preemption. There may be other torts available to you, but breach of fiduciary duty isn't one of them. There's no other facts that support that claim. Thank you. Any questions? A couple definitions that you use in your argument. Bidder data and constituent data. Constituent data, I think I understand, but can you give me your quick definition of both of those? Well, the constituent elements is what I think Climate Purse is seizing on in light of the Smitana Declaration, are the pieces that go into the final bid. And so here, the one document that seems to be the main document that was referenced as the jewel document, that allegedly showed a constituent element. However, what's also abundantly clear, and more clear so when you look at the native, there are no formulas in there. All there are are numbers. You can't reverse engineer and figure out what anyone's profit margin is, because it's just a number. And then bidder data. Bidder data. Bidder data, I understood it to be just the more complete or fulsome bid, such as the bid tabulations that Mr. Smitana was sharing with competitors for the past seven years. And you also said clearly preemption for talking about trade secrets. Yes, Your Honor. So Section 8 of the Illinois... But you're also saying they're not trade secrets. Our position is that they're not trade secrets, but if you look at sort of the language of the ITSAs, as well as the cases that we cited, it talks about if your... if the cause of action is related to the trade secret claim, it doesn't say as a matter of law that it has to be trade secrets. And what... And what I think is interesting with respect to the case cited by... Well, I don't want to go over time. Did I answer your question? No, you can answer my question. Okay. So the case cited by ClimatePros that talks about the fact that preemption doesn't apply in this case. There was actually additional wrongful acts by the defendant in that case. In that case, the defendant stole equipment. He actually set up a shadow company within the organization for the competitor. And the court said specifically the preemption... There is no preemption here because this... I forget the exact quote, but it's something along the lines of this isn't even about the trade secrets. His wrongdoing was so much more extensive than what he allegedly misappropriated. And I think you've answered my question, which is simply because it was allegedly a trade secrets preemption. Correct. Correct. Thank you. Thank you, Your Honor. Counselor Umbaugh, you may reply. So as to the oral argument, I have... I have marked up copies of the documents that Ford has emailed to himself. You don't have justice because they're big. But they contain... And actually, as I was getting ready for this, I need readers. And I need readers plus a... I used my phone to expand it to read it, but it's got markup on labor and it's got cost elements that went into a bid. There is... We cited cases standing for the proposition so that if we... If Juul had this and they gave it to everyone, they'd have an argument that that's not a trade secret. We haven't briefed that. That wouldn't be true. The Seventh Circuit has held repeatedly that even public disclosure in a business context is injurious to trade secret status, but not fatal. But we didn't brief that because it didn't happen. Now, we're not contesting that some kind of document is trade secret. The ultimate bids we're not saying are. We're saying elements of this are and in paragraphs 46 through 52 of our complaint, in non-conclusory fashion, we spell out in great detail which documents he took. We tell him the date of the email, the name of the attachment, and we describe what's in it. It's not conclusory. We say in very substantial detail what the trade secrets are. It's not the ultimate bid number. That's a red herring. We don't know what she saw, to be honest. She didn't say. To be honest, I think if you read the transcript of the oral argument, that she was looking at the Smetana document, but she didn't say in her ruling. So we don't know. There's no written ruling, and we don't know what she's looking at. We're guessing. We would say as to flat rule that bid information in the construction industry can't be a trade secret. That's not true. There's no case in Illinois or anywhere else that's ever said that. We've cited cases saying that components of bid information can be, and in every case they cite, it was after and as a trade secret. It is a... Always? I think, yeah. It's very... If you read trade secret cases all day, which I do, there's this Greek chorus recitation of, it's very fact specific, depends on the case. Like in the trucking industry, where I've done litigation, a lot of times customers will say, they'll give you a tear sheet for a route, for a lane. They'll say, this is what we're paying. Eat this and you can have a job. That's not the price. There's all kinds of You can't compare that with your actual prices. If you see someone's tear sheet, that doesn't give you visibility into what they're actually getting paid. There's a lot more that goes into it. In that industry, sometimes price will be trade secret, sometimes not. That record hasn't been developed here. As the preemption, as we cited in our brief, a document, this is one of the documents he stole. By the way, if it had no value, why email it to a personal email address right after you resign? He emailed this document to himself roughly two days after he resigned. Why? If it's useless, valueless data, why secretly email it to yourself and keep it after you go to work for a competitor? Recept's a low quarter, I would submit. As to preemption, a document isn't a trade secret. A document contains trade secrets. We do not allege that every element of this is trade secret. As we cite in our brief, commingled trade secret and non-trade secret information doesn't give rise to preemption, but as you noted, Justice, once the trade secret claims dismissed, there can't be preemption. They can't have your cake and eat it too. You can't have preemption and no trade secret. Counsel, what you're saying is if it's dismissed with prejudice, the trade secret portion of it, then you should be able to go forward on the other aspect. Yeah, it shouldn't be dismissed with prejudice. There's fact questions here. I won't get into the 615, 619 contradicting well-pleaded facts. They do contradict well-pleaded facts. If this isn't contradicting well-pleaded facts, I don't know what it would be. We took reasonable steps to maintain secrecy. No, you didn't. We plead in copious detail steps we took to maintain secrecy, and in our brief, we cite multiple cases for the proposition that efforts just like ours are found to be reasonable in some cases, not in others. There's no case from Illinois, Wisconsin, anywhere that I've ever seen that may have not cited one saying absence of a nondisclosure agreement is fatal to a trade secret case. Why? Because it's not. Is it a great thing to do to have everyone sign an NDA? Yes. We like to have our clients sign NDAs in every case. Yes. Do I need to have an NDA to file a trade secret case? No. I usually don't have one. Sometimes I do. It's great if I do, but I don't need one, and there's no case saying that I need one. At bottom, Your Honors, this case, the trial judge never explained why the dismissal. As far as we could tell, it was a per se rule. We don't know what document she was looking at, but she held something up to her head and said, I can look at this and tell it's not a trade secret. And the answer is, no, she can't, and neither can you, Justices. How much can competitors get visibility into these component elements of bids in the normal course of business using lawful means without having a spy email them out of a competitor? If the answer is they could make business use of them and they can't reasonably ascertain them through lawful means, it's a trade secret as defined in the statute. And the answer is, we allege it is, they allege it's not, but you can't tell from the record, and you can't tell from gestalting these documents. We will stipulate if for some reason the court doesn't have this device, we'll stipulate for the court to get it. We didn't file it, we'll come up with a way for the court to get it that's secure. If it hasn't happened, again, they filed it, we don't have visibility on how they filed it. But when you look at them, I expect that the court will say, this might be a trade secret, it might not, it's going to depend, as it does in every case, on, in this industry, on these facts, how much could Lombardi find out about the component elements of this document on its own using lawful means, not using a spy. And if the answer is, sure, they could have easily ascertained them not using a spy, then it's not a trade secret and we'll lose. And we should lose. But we're not going to because they don't get access to this, we would love to get this data from a veteran, and we can't. Any other questions? Thank you, counsel, both for your arguments in this matter. This morning it will be taken under advisement that this position shall issue.